NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT TRIPICCHIO and BARBARA McLAREN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE UPS STORE, INC., franchisor; JB & A ENTERPRISES, INC. TURQUOISE TERRAPIN LLC, formerly d/b/a UPS Store #4122; RK & SP SERVICES, INC., formerly d/b/a UPS Store #4122; and HAMILTON PACK N SHIP LLC, d/b/a UPS Store #4122, franchisors, in their own rights and as representatives of a class of similarly situated UPS Store franchisees; and JOHN DOES 1–200.,<br><br>Defendants. | Civil Action No. 21-14424 (RK) (DEA)<br><br>**OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Plaintiffs' Motion to Enjoin Defendants' Class Action Waiver & Arbitration Provision and Improper Communications. (ECF No. 76.) Plaintiffs seek an order pursuant to Federal Rule of Civil Procedure 23(d) declaring that the class action waivers Defendants have secured from putative class members are invalid and barring Defendants from soliciting these waivers from their customers going forward. Plaintiffs filed their motion on November 30, 2022, Defendants filed an opposition brief on May 30, 2023, (ECF No.

91), and Plaintiffs filed a reply brief on June 13, 2023, (ECF No. 92).[1] The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' Motion (ECF No. 76) is **DENIED**.

I.     **BACKGROUND** [2]

Barbara McLaren and Vincent Tripicchio (collectively, "Plaintiffs") used and purchased notary services at New Jersey franchise locations of Defendant The UPS Store, Inc. ("TUPSS"). *McLaren v. UPS Store Inc*, 32 F.4th 232, 234 (3d Cir. 2022). In two separate putative class actions filed in the Superior Court of New Jersey, Plaintiffs sued TUPSS and several of its franchisees (collectively, "Defendants"), purporting to represent a class of customers who were charged more than $2.50 for notary services in violation of New Jersey law. *Id.* at 234–35. Defendants removed both actions to federal court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 ("CAFA"). (*See McLaren v. The UPS Store, Inc.*, No. 21-14424; *Tripicchio v. The UPS Store, Inc.*, No. 21-14512).[3] The Court granted Plaintiffs' motions to remand the actions to State court. *McLaren*, 32 F.4th at 235. On appeal, the Third Circuit vacated the District Court's decision and remanded the case to the District Court to determine whether an exception to CAFA's jurisdiction existed, such that remand to State court was appropriate. *Id.* at 241–42.

---

[1] The matter was reassigned to this Court on May 15, 2023. (ECF No. 90.)

[2] The Court assumes the parties' familiarity with the factual and procedural background of this case as set forth in the Court's prior opinion, (Opinion, ECF No. 85), as well as the Third Circuit's decision in *McLaren v. UPS Store Inc*, 32 F.4th 232, 234 (3d Cir. 2022). Only the facts germane to deciding the pending motions are recited.

[3] Unless otherwise indicated, citations to the docket in this Opinion refer to the filings in *McLaren*, the lead case pursuant to the Honorable Douglas E. Arpert's September 20, 2023 Order consolidating the cases for discovery and pre-trial purposes. (ECF No. 100.) Where necessary to cite to the docket in the terminated case *Tripicchio*, the docket citations are preceded by "*Tripicchio*."

After remand from the Third Circuit, the parties' litigation strategies briefly diverged. McLaren renewed her motion to remand on August 30, 2022, (*McLaren*, ECF No. 64), while Tripicchio consented to federal jurisdiction and filed an Amended Complaint on August 23, 2022, (*Tripicchio*, ECF No. 58), which Defendants promptly moved to dismiss, (*Tripicchio*, ECF No. 60). On October 19, 2022, Plaintiffs, who had previously been represented by separate counsel, notified the Court that one law firm would represent Plaintiffs in both matters going forward. (*Tripicchio*, ECF No. 62.) On April 29, 2023, the Court denied McLaren's motion to remand. (*McLaren*, ECF No. 85). The following day, the Court granted-in-part and denied-in-part Defendants' motion to dismiss Tripicchio' s Amended Complaint. (*Tripicchio*, ECF No. 83.)

On September 18, 2023, Defendants filed a letter stipulation giving their "Consent to the Filing of Plaintiffs' Consolidated Amended Complaint." (ECF No. 99.) Via Order entered September 20, 2023, the Court consolidated the two cases for discovery and pre-trial purposes. (ECF No. 100.) The *McLaren* matter was designated the lead case and the *Tripicchio* matter was administratively terminated.

Shortly after the current counsel began representing both Plaintiffs, Plaintiffs filed the pending Motion on November 30, 2022. (ECF No. 76; Pls.' Br., ECF No. 77-2.)[4] The Court ordered that Defendants' opposition briefing would not be due until fourteen (14) days after it decided the then-pending motion to remand in *McLaren* and motion to dismiss in *Tripicchio*. (ECF No. 79.) After the Court decided those pending motions, the Court reinstated the instant Motion on May 3, 2023, (Text Order, ECF No. 87), Defendants filed a brief in opposition on May 30, 2023, (Defs.' Br., ECF No. 91), and Plaintiffs filed a reply brief, (Pls.' Reply Br., ECF No. 92).[5]

---

[4] Plaintiffs' filed a redacted version of their brief, (ECF No. 76-2), and simultaneously filed an unredacted version of their brief under seal, (ECF No. 77-2).

[5] One day after filing a Motion for Preliminary Injunction in *McLaren*, Plaintiff in *Tripicchio* filed an identical motion, supported by an identical brief. (*Tripicchio*, ECF No. 70.) The parties treated the

3

Plaintiffs' Motion concerns a class action waiver that TUPSS's New Jersey franchisees secure from each customer as a condition of receiving notary services from the TUPSS franchisee (the "Waiver"). TUPSS's Rule 30(b)(6) witness testified at his deposition that TUPSS required its franchisees to get a Waiver from each customer as a condition of receiving services starting around September 2021. (Pls.' Mot. Ex. B, ECF No. 77-4 at 89:14–22, 90:20–91:1.) The witness agreed that TUPSS's purpose in instituting these Waivers was "likely to try to mitigate, reduce litigation," (*id.* at 91:8–13), and that by signing the Waiver a customer is "essentially waiving their right to class action litigation," (*id.* at 250:2–11).

The document, entitled a "UPS Store Electronic Waiver for Notary Services," was created by TUPSS for its franchisees to use, (*id.* at 252:1–19), and states in relevant part:

> You and We agree that any controversy or claim, whether at law or equity, arising out of or related to the provision of services by this The UPS Store center shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration, regardless of the date of accrual of such dispute, except for claims that may be filed in courts of limited jurisdiction such as small claims, justice of the peace, magistrate court, and similar courts with monetary limits of $30,000 or less on their jurisdiction over civil disputes. You and We agree that this agreement to arbitrate claims also applies to any controversy or claim involving The UPS Store, Inc. or any of its affiliated entities.
>
> . . .
>
> Any arbitration under this Agreement will take place on an individual basis: class, mass, consolidated or combined actions or arbitrations or proceeding as a private attorney general are not permitted. You and We are each waiving the right to trial by jury. You and We are further giving up the ability to participate in a class, mass, consolidated or combined action or arbitration.

---

injunction motions in *McLaren* and *Tripicchio* identically, with Defendants filing identical opposition briefs in each case and Plaintiffs filing identical reply briefs. When the Court ordered the two cases consolidated for discovery and pre-trial purposes on September 20, 2023, the *Tripicchio* action and the pending preliminary injunction motion in that case were terminated. To make clear that the Court's Opinion and Order here apply equally to the identical Motion filed in the *Tripicchio* action, the Court will concurrently enter an Order on that docket denying the Motion for Preliminary Injunction in *Tripicchio*.

(Pls.' Mot. Ex. A, ECF No. 77-3.)

## II. LEGAL STANDARD

Parties generally may communicate with putative class members prior to class certification. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981) (holding that the district court improperly restrained a party's communication with class members and recognizing that "in many cases there will be no problem requiring remedies" limiting communications with a class); *see also* Manual for Complex Litigation (Fourth) § 21.12 (2004) ("Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification . . . ."). However, in light of "the potential for abuse" in class actions, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100. Federal Rule of Civil Procedure 23(d)(1) provides that in a class action proceeding, "the court may issue orders that":

> (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of:
> (i) any step in the action;
> (ii) the proposed extent of the judgment; or
> (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;
> (C) impose conditions on the representative parties or on intervenors
> . . .

Fed. R. Civ. P. 23(d)(1). Rule 23(d) relief may be appropriate for pre-certification communications with putative class members. Manual for Complex Litigation (Fourth) § 21.12 (2004) ("Rule 23(d) authorizes the court to regulate communications with potential class members, even before certification." (citing *In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988)).

The District Court's "discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules." *Gulf Oil Co.*, 452 U.S. at 100 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)). Any order issued pursuant to Rule 23(d) "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101–02; *see also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 310 (3d Cir. 2005) ("[A] remedy should be restricted to the minimum necessary to correct the effects of improper conduct under Rule 23." (citing *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977))). The party moving for Rule 23(d) relief bears the burden of establishing its need. *See Goodman v. Burlington Coat Factory Warehouse Corp.*, No. 11-4395, 2014 WL 12607854, at *2 (D.N.J. Aug. 20, 2014).

### III.   DISCUSSION

Plaintiffs seek two types of Rule 23(d) relief. *First*, Plaintiffs request that the Court invalidate "any executed . . . Waivers" that TUPSS or any New Jersey franchisee has received from any customer to date. (Proposed Order, ECF No. 76-1 at 2; *see also* Pls.' Br. at 20–21.) *Second*, Plaintiffs seek the Court to mandate that Defendants modify the Waivers to provide customers with detailed disclosures about this litigation, permit customers to opt out of the Waiver before receiving notary services, and create a court-approved website at Defendants' expense with information about this litigation. (*Id.*)

Plaintiffs cite the Court's "broad authority" under Rule 23(d) to "oversee and limit" parties' communications with putative class members to justify this relief. (Pls.' Br. at 11.) Plaintiffs contend that the Waiver is "materially misleading" because it does not mention the pending litigation and will interfere with the ability of "existing and potential putative class members" to join this action. (*Id.* at 15–17.) Plaintiffs maintain that seeking the Waivers is coercive because

Defendants are exploiting their "one-sided business relationship" with their customers seeking notary services and because customers are unable to opt out of the Waiver. (*Id.* at 17–20.)

Defendants respond that Plaintiffs' request to invalidate all already-executed Waivers is overly broad because the Waivers cover conduct outside the scope of the instant litigation and because some customers did not pay more than $2.50 for notary services. (Defs.' Br. at 11–12.) Defendants also contend that Rule 23(d) offers no grounds for the Court to regulate Defendants' use of Waivers solicited from customers who have not yet received notary services and who are therefore not yet putative members eligible to join the class once certified. (*Id.* at 12–17, 22–30.) Defendants argue that Plaintiffs' requested injunctive relief is impermissibly imprecise under Rule 65(d) and that Rule 65 does not empower the Court to regulate communications of non-parties to the litigation, such as the non-party TUPSS franchisees. (*Id.* at 18–22.)

### A. WAIVER INVALIDATION

Plaintiffs move the Court to declare that the Waivers any customers of a TUPSS New Jersey franchisee executed from September 2021 until the present are "invalidated and shall have no legal effect." (Proposed Order at 2.) However, such broad relief is inappropriate at this juncture, and the Court may revisit the issue of the validity of Waivers that TUPSS's New Jersey franchisees have secured at a later date.

At the outset, the Court finds no authority in the text of Rule 23(d) for it to declare the waiver of a right to participate in a class action invalid before any party attempts to enforce the waiver. As previously noted, the Court's authority under Rule 23(d) is "bounded by the relevant provisions of the Federal Rules." *Gulf Oil Co.*, 452 U.S. at 100. The language of Rule 23(d) empowers the Court to require "giving appropriate notice to some or all class members" or "impose conditions on the representative parties." Fed. R. Civ. P. 23(d)(1). Plaintiffs point to no language

that establishes the Court's authority for the draconian relief of invalidating all Waivers, especially at this juncture of the litigation.

In the cases Plaintiffs cite in which courts have found class action waivers invalid, the decisions issued when class action defendants attempted to use the waivers to restrict the class's size. *See, e.g. Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922 (11th Cir. 2014) (affirming the district court's denial of defendant's motion to compel arbitration); *Brodsky v. HumanaDental Ins. Co.*, No. 10-03233, 2016 WL 5476233, at *12 (N.D. Ill. Sept. 29, 2016) (refusing to enforce arbitration provision argued on plaintiff's motion to certify class); *Balasanyan v. Nordstrom, Inc.*, No. 10-2671, 2012 WL 760566, at *1 (S.D. Cal. Mar. 8, 2012) (invalidating arbitration agreement class members signed upon the defendant's motion to compel arbitration). Defendants have not yet made such arguments here. Indeed, in *O'Connor v. Uber Techs., Inc.*, which Plaintiffs discuss in depth, the court declined to invalidate a class action waiver absent an attempt to enforce it. No. 13-3826, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ("Because there is no allegation that a motion to compel arbitration is pending or threatened, the issue of whether the arbitration provision is enforceable is not yet ripe for resolution.").

Defendants' objections to the imprecision of Plaintiffs' Proposed Order further illustrate the prudence of withholding judgment on the Waivers' validity. Plaintiffs propose that the Court invalidate any Waiver "received to date by Defendants or members of the Defendant Class (Defendant TUPSS and its New Jersey Franchisees)." (Proposed Order at 2.) However, as Defendants point out, the Waivers cover conduct irrelevant to the instant litigation, which arises solely from customers paying more than $2.50 for notary services. To avoid wholesale invalidation of the Waivers or the Court attempting to rewrite the Proposed Order itself, the Court will not rule on the Waivers' validity until Defendants attempt to enforce those waivers. *See O'Connor*,

2013 WL 6407583, at *3 ("At this juncture, the Court declines to address whether the arbitration agreement is unenforceable as unconscionable without prejudice to further consideration at a later time."). This is not to say that the Waivers secured after September 2021 are enforceable against putative class members who received services before that date. Rather, now is not the prudent time to make that decision. Therefore, Plaintiffs' request to invalidate the Waivers is denied.

### B.   PROSPECTIVE INJUNCTION

Plaintiffs also object to Defendants' communications with "existing and potential Putative Class members" and request that the Court order that the TUPSS New Jersey franchisees use an amended Waiver that includes a "narrative summary notice disclosure of the litigation" and permitted opt-outs, as well as a "website to be administered at Defendants' expense" that summarizes the litigation. (Proposed Order at 2.)

Plaintiffs have not established that there are "specific findings" of "potential interference with the rights of the parties" on which the Court could base Rule 23(d) injunctive relief. *See Gulf Oil Co.*, 452 U.S. at 100. Before a Rule 23(d) order issues, the Court looks for specific harm that would result from the allegedly misleading communication. *See In re Allergan BIOCELL Textured Breast Implant Prod. Liab. Litig.*, No. 19-2921, 2020 WL 3977674, at *5 (D.N.J. July 14, 2020) (declining to limit communications with class members under Rule 23(d) because "Plaintiffs have not suggested how the [contested waiver] is otherwise misleading or abusive"); *Bobryk v. Durand Glass Mfg. Co.*, No. 12-5360, 2013 WL 5574504, at *4 (D.N.J. Oct. 9, 2013) (declining to limit communications with class members under Rule 23(d) because "[t]he record does not show . . . evidence to support plaintiffs' contention that defense counsel's actions deterred putative class members from participating in the collective action"); *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) (declining to enjoin communications

when "there is nothing coercive or intimidating about the communications"). When courts do enter Rule 23(d) relief, it is based on specific evidence that putative plaintiffs will be deterred from participating in the class action. *See, e.g. Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1064 (W.D. Wash. 2019) ("There is a serious risk that putative class members, having been pressured to click away their right to participate in these cases, will be inclined to disregard further communications about them.").

Plaintiffs contend that the Waivers are misleading because they "give[] no notice at all of the existence or pendency of the *McLaren* or *Tripicchio* Actions." (Pls.' Br. at 10.) Undoubtedly, the Waivers do not notify customers about the existence of this litigation. Once Plaintiffs move for class certification, the Court may invalidate a future attempt to wield the Waivers secured *after* September 2021 to preclude customers who received notary services *before* September 2021 from joining the class. Plaintiffs predict that Defendants "will undoubtedly argue" exactly this: that the Waivers preclude both existing and potential putative class members from joining the class. (Pls.' Reply Br. at 6, 8.) However, at this juncture, it is unclear how Defendants will employ the Waivers. Plaintiffs' speculation about the arguments Defendants will raise, absent any suggestion that customers will be prohibited from participating in the class action in the future if the Court holds the Waivers invalid, does not establish a present need for the Court to rewrite the Waivers and order the other relief Plaintiffs request. To the extent Defendants subsequently attempt to enforce the Waivers against putative class members who received subsequent services after September 2021 and signed a waiver, the Court can address the validity of those waivers then.

The Court's conclusion is unchanged by Plaintiffs' argument that rewriting the Waivers is required to protect *potential* as well as *existing* putative class members.[6] In fact, the Court finds

---

[6] Adopting the distinction Plaintiffs appear to draw between the groups, *existing* putative class members are customers who purchased notary services from Defendants between 2014 (the start of the class period)

10

scant authority supporting a finding that Rule 23(d) permits the Court to enjoin Defendants' request for Waivers for customers who, at the time they are asked to sign the Waiver, have not yet received notary services. Although no Court within the Third Circuit has addressed this question, the weight of out-of-Circuit courts to have considered the question supports concluding that Rule 23(d) relief does not extend to potential putative class members. *See Kater*, 423 F. Supp. 3d at 1065 ("The Court will not interfere with Big Fish's communications with new players or old players who did not purchase chips in the relevant time frames."); *McKee v. Audible, Inc.*, No. 17-1941, 2018 WL 2422582, at *8 (C.D. Cal. Apr. 6, 2018) ("The Court would take no action with respect to putative class members who were not Audible members prior to the Court's denial of the [motion to compel arbitration]."); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252–53 (S.D.N.Y. 2005) ("Because these cardholders' rights were hypothetical at the time the arbitration clauses were added, that change did not alter the status of the pending litigation.").[7]

Because the Court concludes that Plaintiffs have not established specific harm that would flow from permitting Defendants to employ their current Waiver and justification for ordering the injunctive relief Plaintiffs request, Plaintiffs' motion is denied.

---

and September 2021 (when Defendants began requiring the Waiver). On the other hand, *potential* putative class members are customers who did not purchase notary services from Defendants until after Defendants began enforcing the class action waiver in September 2021, and thus are asked to waive their rights to join the class *before* they purchased the notary services that might make them eligible to participate in the class.

[7] Plaintiffs' sole authority in support of this contention is *O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2014 WL 1760314, at *1 (N.D. Cal. May 2, 2014). (*See* ECF No. 90 at 8–11.) In *O'Connor*, the District Court held that Rule 23(d) permitted it to regulate communications with potential putative class members — i.e. individuals who were asked to sign arbitration agreements before they entered any transaction with the defendant that gave rise to the underlying litigation. *Id.* at *3–6. However, the Court in *O'Connor* cited no authority apart from the broad language of *Gulf Oil* in concluding that pre-certification potential putative class members were within the scope of people the Court may protected pursuant to its authority under Rule 23(d). *Id.*

## IV.     CONCLUSION

For the reasons set forth above, Plaintiffs' Motion To Enjoin Defendants' Class Action Waiver & Arbitration Provision and Improper Communications with the Putative Class, (ECF No. 76), is **DENIED**. An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: September 28, 2023